IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:15-cr-00184-2 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| BRIAN ERNEST MERRIWEATHER | ) | |

# MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. No. 364, "Motion"). Via the Motion, Defendant seeks a reduction of his 216-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release"[1] under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition (Doc. No. 366, "Response"), arguing that Defendant's Motion should be denied because Defendant has not identified "extraordinary and compelling reasons" for a sentence reduction and consideration of the 18 U.S.C. § 3553(a) factors counsels strongly against granting compassionate release.

---

[1] Such motions are also known as ones for "compassionate release"; thus, the Court refers to both "compassionate release" and "sentence modification" throughout this opinion when referring to Defendant's requested relief. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

BACKGROUND

On October 28, 2015, Defendant and two co-defendants were charged in a sixteen-count indictment. (Doc. No. 21). Specifically, Defendant was charged with three counts: conspiracy to distribute and to possess with intent to distribute Oxymorphone and Oxycodone, in violation of 21 U.S.C. § 846 (Count One); distribution and possession with intent to distribute Oxymorphone, in violation of 21 U.S.C. § 841(a)(1) (Count Two); distribution and possession with intent to distribute Oxymorphone, in violation of 21 U.S.C. § 841(1)(A) (Count Six). (*Id*.).

After a three-day jury trial, Defendant was convicted on all three counts. (Doc. Nos. 204-209). On January 4, 2017, United States District Judge Billy Roy Wilson sentenced Defendant to serve 216 months of imprisonment followed by 6 years of supervised release. (Doc. No. 277).[2] On appeal, the Sixth Circuit affirmed the convictions and sentence. (Doc. No. 302). Defendant has been serving his sentence at FMC Lexington. According to BOP, Defendant's release date is March 5, 2031. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Jan. 18, 2020).

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[3] a district court *may* under certain circumstances grant a defendant's motion for

---

[2] The undersigned took no part in the trial or sentencing of Defendant and indeed was at no point assigned to Defendant's case until the instant Motion was filed.

[3] That paragraph of Section 603 provides:

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE

compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).[4]

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three,

---

RELEASE.—Section 3582 of title 18, United States Code, is amended—
  (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

[4] In this case, the Government concedes that Defendant has exhausted his administrative remedies. (Doc. No. 366 at 1).

> "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[5] Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in

---

[5] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

*Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[6] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

---

[6] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

ANALYSIS

I. EXTRAORDINARY AND COMPELLING REASONS

In addressing the merits, the Court generally must first determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

Defendant contends that his medical conditions (hypertension, hypokalemia, obesity, osteoarthritis, and decreased kidney function) combined with the COVID-19 pandemic constitute extraordinary and compelling reasons for his release. (Doc. No. 364 at 7).

In the Government's response, it argues that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release for several reasons. First, the Government, while conceding that Defendant's medical records reveal that he has been diagnosed with hypokalemia and osteoarthritis, argues that these conditions have not been recognized by the CDC as possibly putting persons at higher risk for severe illness from COVID-19. (Doc. No. 366 at 12). Next, while conceding that Defendant's PSR indicated that he has been diagnosed with hypertension, the Government argues that the CDC states that hypertension only *might* place a person at an increased risk for severe illness from COVID-19, and thus does not constitute and extraordinary and compelling reason. (*Id.*). The Government then argues that Defendant has not provided documentation (although the Government concedes that Defendant's medical records

demonstrate that Defendant was obese at one time) that reveals he is presently obese. (*Id*.). Finally, the Government asserts that Defendant's medical records indicate that his medical conditions are being well managed while he is in prison. Thus, the Government argues that Defendant has not demonstrated extraordinary and compelling reasons for release.

The Court need not decide whether Defendant has met his burden to demonstrate that extraordinary and compelling reasons exists, because the Court below decides that compassionate release is not available to Defendant even if he were able to demonstrate extraordinary and compelling reasons.

## II. SECTION 3553(a) FACTORS

The Government argues that Defendant's Motion should be denied because the Section 3553(a) factors collectively weigh against granting compassionate release to Defendant. (Doc. No. 366 at 13-16). The Court agrees, as reflected by the below analysis of factors.[7] *See Jones*, 980 F.3d at 1112-13 (explaining that the district court must supply specific factual reasons in its consideration of the Section 3553(a) factors).

*The nature and circumstances of the offense* cut against compassionate release. Defendant's instant offenses of conviction involves an extensive, multi-year conspiracy to distribute Oxycodone and Oxymorphone that resulted in the illegal distribution of large quantities of prescription pills. The PSR provides that a "conservative estimate of the pills distributed as part of the conspiracy is at least 10 (10 mg) oxymorphone pills per day between February 22, 2013, and September 20, 2015. In a span of 950 days, there were approximately 9,500 pills distributed."

---

[7] *Jones* suggests that a district court has the discretion to assume *arguendo* that extraordinary and compelling reasons exist and then turn to the Section 3553(a) factors, inasmuch as *Jones* affirmed a district court that did exactly that. *See Jones*, 980 F.3d at 1108 ("Thus, the district judge in Jones's case permissibly assumed for the sake of argument that extraordinary and compelling circumstances existed[.]").

(PSR at ¶ 33). Based on these facts, the Court finds that the nature and circumstances of Defendant's underlying offense weigh against granting compassionate release.

*The history and characteristics of* Defendant, which is relevant to several other Section 3553(a) factors (as indicated below), cut against compassionate release.

The Government argues that this factor weighs against granting Defendant compassionate release because Defendant's criminal history is "very serious, as [Defendant] had been engaged in criminal activity for more than 25 years prior to the conviction in the instant case." (Doc. No. 366 at 14 (citing PSR at ¶¶ 54-88)). The Government (correctly) summarizes Defendants' criminal history as follows:

> On February 10, 1990, Merriweather entered a truck intending to take that truck from its rightful owner. Merriweather was arrested the same day, and was charged with burglary of an automobile. On March 22, 1991, Merriweather sold cocaine to a confidential informant. On April 23, 1991, Merriweather burglarized a residence in Clarksville, taking a microwave and a television and selling those items at a pawn shop. And on May 25, 1991, Merriweather broke into a car and took a speaker box containing MTX speakers; Merriweather was arrested on May 28, 1991, and was charged, in case number 29314, with burglary of an automobile. In July 1991, Merriweather pled guilty in the February 1990 auto burglary case, and was placed on one year of post-trial diversion. In September 1991, he pled guilty in the sale-of-cocaine case, and was sentenced to eight years' imprisonment (although he was released to probation in June 1992). And in June 1992, he was sentenced to a suspended term of imprisonment of two years in the May 1991 auto burglary case, and to 11 months and 29 days' imprisonment in the April 1991 residential burglary case. Merriweather violated the terms of his probation in connection with all four cases.
>
> Merriweather was also arrested in September 1991 for possessing crack cocaine with the intent to resell, in connection with his possession of 62 rocks of crack cocaine in Clarksville. In February 1992, Merriweather pled guilty and was sentenced to eight years' custody. Merriweather violated the terms of probation in that case as well.
>
> In April 1993, Merriweather was arrested in Clarksville for possession of cocaine. He was sentenced in February 1994 in connection with that offense to 11 months and 29 days' incarceration. Meanwhile, in December 1993, Merriweather was arrested for driving on a suspended license, and was ordered (in January 1995) to pay a fine. In April 1996, Merriweather was arrested a second time for driving

on a suspended license. In October 1996, Merriweather was given a suspended sentence of 45 days. Less than one year later, in August 1997, Merriweather was arrested a third time for driving on a suspended license; in October 1998, he was given a suspended sentence of 45 days. And in July 1999, Merriweather was arrested a fourth time for driving on a suspended license. In June 2000, Merriweather was given a suspended sentence of 11 months and 29 days' incarceration.

Beginning in the early 2000s, Merriweather began to accrue additional felony drug convictions. In December 2000, Merriweather was charged in Clarksville with sale and delivery of more than 0.5 grams of cocaine. In April 2002, Merriweather was sentenced to 14 years' incarceration (but was released to parole in May 2008). In May 2012, Merriweather faced felony drug charges after selling 40 oxycodone pills to a confidential informant, and after the police found cocaine on Merriweather's person following his arrest. While these charges were pending, Merriweather was again arrested, in November 2013, for selling under 0.5 grams of cocaine to a confidential informant in Clarksville. In April 2014, Merriweather pled guilty to criminal conspiracy and tampering with evidence in connection with the May 2012 charges, and was sentenced to seven years of incarceration, all of which was suspended except for one year. And in May 2014, Merriweather pled guilty to the sale of less than 0.5 grams of cocaine in connection with the November 2013 charges, and was sentenced to nine years of incarceration, all of which was suspended. And in 2009, 2010, and 2013, respectively, Merriweather sustained three additional convictions for driving on a suspended license.

Finally, and in addition to these criminal convictions, Merriweather also has a lengthy history of arrests not resulting in convictions. These include arrests for aggravated robbery (in 1993 and 1996), driving on a suspended license (in 1993, 1994, 2010, 2011, and 2012), criminal trespass (in 1995), manufacturing, selling, and delivering cocaine and marijuana (in 1998), felony murder (in 2000), sale of a controlled substance, including Lortabs, cocaine, and oxycodone (in 2012), possession of more than 0.5 grams of cocaine for resale (in 2012), and aggravated robbery (in 2013).

(*Id*. at 14-16 (citing PSR at ¶¶ 54-88)).

The Court finds that the history and characteristics of Defendant weigh heavily against granting compassionate release under these factual circumstances. The Court does not presume this merely because Defendant is currently incarcerated for serious offenses. The inquiry is more comprehensive than that, involving most significantly a review of Defendant's entire criminal history, which the Court finds to be extensive. Combined with his current offense, this criminal

record, which includes serious conduct that occurred time and time again over many years, prevents the Court (as additionally touched on below) from concluding that Defendant would not pose a danger to the community if released. *See*, *e.g. United States v. Serrano*, No. CR 13-4004 RB, 2020 WL 3869475, at *2 (D.N.M. July 9, 2020) (denying motion for compassionate release where the defendant had an extensive criminal history).

Ultimately, Defendant's criminal record demonstrates his repeated disrespect for the law and a substantial possibility (though admittedly, and fortunately, not a certainty) of recidivism. Accordingly, the Court concludes that this factor weighs against granting compassionate release. This case is like *United States v. Gordon*, No. 17-20067, 2020 WL 4696596 (E.D. Mich. Aug. 12, 2020), in which the court found this factor cut against the defendant-movant because

> Defendant has proven himself to be a serial violator of the law, a repeat felon who has, over the course of decades, failed to improve his behavior or establish a law-abiding lifestyle. He has been trafficking dangerous narcotics since he was a young man. . . .
>
> . . . Even if the court were to consider release with conditions, over the course of his life, Defendant has repeatedly and flagrantly violated court-imposed rules and probation.

*Id.* at *4.

Moreover, as the Government notes, Defendant's condition has been managed while in prison, and BOP has been taking efforts (imperfect though they may be) to control the spread of COVID-19. These circumstances are relevant to the history and characteristics of Defendant (and presumably also to the need to provide Defendant with medical care, a factor discussed below). *See Ruffin*, 978 F.3d at 1009 (affirming district court's denial of motion for compassionate release for an inmate-defendant with serious medical conditions, in part because he "was receiving regular medical treatment to manage those conditions" and "the prison had adopted sufficient preventive measures to slow the spread" of COVID-19"). Thus, the Court agrees with the Government that

there is no reason to believe Defendant would receive better care than he is currently receiving if he were released.

*The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense* likewise cuts against compassionate release. The Court reaches this conclusion based, once again, on the rationale set forth in *Gordon*. *See* 2020 WL 4696596, at *4 (finding that this factor cut against the defendant-movant where defendant-movant "ha[d] shown himself unwilling or unable to engage in law-abiding behavior" and where "[d]espite committing serious crimes and repeatedly receiving terms of probation in lieu of long prison sentences, [d]efendant has flouted court-imposed conditions and continued his involvement in the world of crime and narcotics trafficking.").

*The need to afford adequate deterrence to criminal conduct* also cuts against compassionate release. This is, again, for the same reasons discussed in *Gordon*—specifically, the fact that prior leniency has not fostered Defendant's compliance with the law and that compassionate release would occur after only Defendant served only a relatively small (albeit greater than in *Gordon*) percentage of the otherwise-appropriate sentence. *See id.* ("None of his prior penalties proved effective at divesting Defendant of criminal habits. . . . The court finds release only two years after the imposition of a thirty-year sentence to be inadequate to effect proper deterrence, which has been, up to this point, demonstrably unsuccessful.").

Defendant's criminal history outlined above suggests that longer incarceration is necessary to *protect the public from further crimes of the defendant*. *See id.* at *5 (finding that this factor cut against compassionate release because the defendant-movant "has a history of committing crimes only to be released into the public to recommit"). As in *Gordon*, Defendant here "has proven to be

a danger to the community," and "the [C]ourt cannot find that he no longer presents a threat to the health and safety of the public." *Id.* at *5.

*The need to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* likewise does not cut in favor of compassionate release for Defendant. The Court will first focus on Defendant's medical need to avoid a COVID-19 infection and, failing that, to avoid a poor outcome from a COVID-19 infection.

The Court will not act like it knows the extent to which Defendant's chances of COVID-19 infection would be lower if he is released than if he stays in BOP custody, or how much more likely a bad outcome upon infection would be for him as opposed to someone without his medical condition. As matter of sheer epistemology, the undersigned cannot and does not know such things; this is true despite publicly available information from medical experts and public health officials, inasmuch as they do not always agree with one another on issues related to COVID-19 and inasmuch as some seem to have reversed themselves on various issues over time.[8] In short, information and opinions regarding the prevalence of, effect of, and optimal countermeasures to COVID-19 have been in constant flux, and it would be folly for the Court to rely blindly on any particular opinion or factual assertion merely because it comes from a purportedly knowledgeable or reputable source.

Having said that, the Court is willing to accept that Defendant is at substantial risk of COVID-19 infection at FMC Lexington, as there are currently 439 active COVID-19 cases in the

---

[8] It seems clear to the undersigned that certain public health authorities, public health officials, and other public officials over time have equivocated regarding, or even starkly changed, their views concerning one or more of numerous issues, including but not limited to: whether COVID-19 can be transmitted person to person; whether persons should avoid crowds and/or otherwise alter their daily regimen due to the presence of COVID-19 in the United States; the likely death toll and mortality rate from COVID-19; whether masks/face coverings should be worn; the extent to which COVID-19 may be transmitted via contact with inanimate surfaces; and whether an effective vaccine could be rolled out during calendar year 2020.

facility. *See COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Jan. 19, 2021). The Court is also willing to assume that Defendant's medical conditions make him prone to relatively bad outcomes in case of infection.

But that does not mean that these circumstances ultimately support compassionate release. For one thing, it is not like there in no substantial risk of infection outside of BOP custody. COVID-19 cases continue to occur at an alarming rate across the United States, including Montgomery County, Tennessee (where Defendant proposes to reside), which has experienced an average of 165.8 new cases reported per day over the last fourteen days. *See* Tenn. Dept. of Health, COVID-19 County Data Snapshot, https://www.tn.gov/health/cedep/ncov/data/county-data-snapshot.html (last accessed Jan. 19, 2021). And as is also a matter of public record, these cases have accrued despite substantial steps by both individuals and government authorities to keep the infection rate down.

Additionally, given Defendant's history of criminal activity, Defendant unfortunately has demonstrated an unwillingness and/or inability to comply with rules and societal norms in at least some important respects. This is vital because decreasing his risk of infection upon release from BOP custody would require him to observe public/health and societal norms related to COVID-19, such as handwashing, face-covering and social distancing. Where a defendant (like Defendant) has not been compliant in the past with applicable societal standards and conditions of release, the Court cannot have confidence that such defendant will "play by the rules," including the generally acknowledged "rules" for minimizing risk from COVID-19. Thus, it does not make good sense for the Court to release Defendant on essentially the implied condition (or understanding) that he will follow such rules. *Cf. Gordon*, 2020 WL 4696596, at *4 ("Even if the court were to consider

release with conditions, over the course of his life, Defendant has repeatedly and flagrantly violated court-imposed rules and probation.").

For all of these reasons, there is no good basis to believe that Defendant's release is likely *in actuality*—not just theory—to substantially reduce his risk from COVID-19.

*The sentencing guidelines and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct* do not support compassionate release. The guideline range for Defendant was 262 to 327 months. (PSR at 32). The Court sentenced Defendant to serve 216 months of imprisonment, a below-guidelines sentence. According to the BOP, Defendant has roughly 121.5 months of his sentence left to serve. *See* Federal Inmate Locator, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Jan. 18, 2020) (listing Defendant's projected release date as March 5, 2031). And clearly that figure would be higher, except that BOP evidently calculated its release date under the assumption that Defendant would receive more or less full credit for good time served (roughly 32 months for a 216-month sentence). And Defendant has been accruing sentencing credit since November 3, 2015, and thus has served roughly 62.5 months of his sentence. Thus, the revised sentence requested by Defendant amounts to less than 35% of his original sentence, even as reduced by contemplated credit for good time served. This sentence would represent a significant variance from what is already a below-guideline sentence, and this fact may weigh against his release. *See United States v. Kincaid*, 805 F. App'x 394, 395-96 (6th Cir. 2020) (holding that it is appropriate for district courts to consider the percentage of the overall sentence left to be served when addressing compassionate release motions); *Ruffin*, 978 F.3d at 1008 (affirming district court's denial of motion for compassionate release, in part because the defendant-inmate "has yet to serve even half of his 25-year sentence" and because "the court had already varied downward" by one-

sixth the bottom of the guideline range). Although the guidelines of course are advisory only, and there is nothing wrong with below-guidelines sentences in general, the Court can (and in this instance does) treat such a large requested variance as tending to frustrate the objective of avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

Accordingly, the Court finds that to grant Defendant compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. The Court also notes that the fact that Defendant has served nowhere near all of his sentence can weigh against Defendant not only on this factor, but also on other factors. *See Ruffin*, 978 F.3d at 1008 ("We have recognized that some of the § 3553(a) factors, including the "need to provide just punishment" and "to reflect the seriousness of the offense," allow courts to consider the "amount of time" that a defendant has served on a sentence when deciding whether to grant a sentence reduction."); *see also Jones*, 980 F.3d at 1115 (affirming the district court's denial of the defendant's compassionate release motion where the district court examined the Section 3553(a) factors and reasoned that the factors weighed against granting the motion because, among other things, the defendant "had served only two years of his decade-long sentence [for non-violent drug offenses] and that [the defendant] was a repeat offender").

For all of these reasons, the Court finds that the Section 3553(a) factors collectively weigh in favor of denying Defendant's Motion.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering the Section 3553(a) factors.

For these reasons, the Motion (Doc. No. 364) is **DENIED**.

An appropriate Order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE